UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN MCSWEENEY, CHARLIE TOLLEY, JEREMIAH MCKINNEY, JAMES HELFERICH, ERNEST NURULLAEVA, an JOHN DOE 1 and 7,<br><br>Defendants. | Civil Action No. 1:12-cv-00842-TWP-MJD |

**MEMORANDUM IN SUPPORT OF:**
**MOTION TO ISSUE SANCTIONS**

I. Introduction

The Plaintiff, Malibu Media, LLC ("Malibu"), through its counsel, Paul J. Nicoletti, Esq. ("Nicoletti") filed this suit against seven Doe defendants. (ECF Docs. 1, 18). They did so without reasonable investigation and in bad faith, violating Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. They continued their campaign of filing papers without basis in law or facts by filing a Notice of Election to Statutory Damages, for improper purposes and being bereft in legal support, violating 28 U.S.C. §1927 as well as Rule 11. (ECF Doc. 79). Rather than utilize economical tools such as DMCA Takedown notices, Malibu and its counsel, have commandeered the judicial system, and engaged in abusive litigation tactics, to create a new revenue stream, inviting this Court to exercise its inherent authority to prevent such behavior.

Helferich brought a Motion to Quash Service of the Subpoena and to Set Aside the Default Judgment in mid-May. (ECF Doc. 67). That motion, being fully briefed by June 12, 2013, and unopposed (ECF Doc. 69) was never ruled upon. Thus, Helferich remained unable to file an answer in this case. However, the Court allowed Helferich to conduct and participate in discovery pending the resolution of his Motion to Vacate. Discovery was served, Malibu refused to answer, and the matter mediated pursuant to local rule (ECF Doc. 86). Rather than

turnover information that would certainly show the case to be bunk and frivolously filed, Malibu filed its Notice of Voluntary Dismissal, essentially cutting and running from this case.  (ECF Doc. 89).

## II. Governing Law

Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this Court's inherent authority to issue sanctions are implicated by Malibu's, and it's counsel's, bad-faith in filing of multiple frivolous documents and unreasonably raising the costs of Helferich, an innocent, in defending himself.  The totality of their behavior can only indicate they are engaging in abusive litigation.

The Seventh Circuit has held that sanctions are collateral to the subject of the underlying action and can be acted upon even if a notice dismissal has been filed.  *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079 (7th Cir. 1987), *cert dism'd,* 485 U.S. 901 (1988).  This judicial stance, citing the *Szabo* case, was specifically adopted by the Supreme Court in *Cooter Gell v. Hartmarx.* 496 U.S. 384, 395 (1990).  Thus, this Court retains authority to issue sanctions.

### A. Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11[1] allows this Court to sanction any party or attorney who violates the dictates of the Rule.  Fed. R. Civ. P. 11(c)(1).  Rule 11 requires attorneys to sign each pleading or paper they file with the Court.  Fed. R. Civ. P. 11(b)(1), (2).  In doing so, the attorney is certifying that he or she read the document and believes it to be grounded in fact – having evidentiary support, and tenable in law – that is, having a reasonable basis in law.  *Id.*  The Rule provides that violating these provisions is to be punished with appropriate sanctions.  Fed. R. Civ. P. 11(c)(4).  Typically, and as authorized by the Rule, these sanctions consist of an order to pay the opposing party's costs and attorney's fees incurred because of the violation.  *Id.*; *See, e.g. In re TCI Ltd.,* 769 F. 2d 441, 445, *citing, Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1983), *cert denied,* 108 S.Ct. 269 (1987) (imposing sanction of attorney's fees).

### B. Statutory authority under 28 U.S.C. § 1927

---

[1] Unfortunately, due to the fact that Helferich was notice dismissed from this case as he was unable to file an answer, any request for Malibu or its counsel to withdraw pleadings under Rule 11 is moot.  Thus, there is a good-faith basis warranting the issuance of sanctions despite the failure to abide by Federal Rule of Civil Procedure 11(c)(2).

2

Congress has provided that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 19 U.S.C. § 1927. In fact, courts can issue sanctions under this rule *sua sponte*. *See, e.g. Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717 (7th Cir. 2006), *reh'g denied*. On the face of the statute, unlike Rule 11 sanctions – and those under this Court's inherent authority – sanctions under 28 U.S.C. § 1927 can only be leveled against counsel. 28 U.S.C. § 1927. However, the purpose of all these forms of sanctions is to prohibit frivolous litigation and abuses by attorneys. *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1490 (7th Cir. 1989).

Pursuing claims without plausible legal or factual basis is grounds for such sanctions. *See, Id.* at 720. Whether or not a claim in a pleading has merit is irrelevant to a determination as to whether or not the filing was for the purposes of harassment, and thus, sanctionable. *Kapco Mfg. Co., Inc.,* 886 F.2 1485 at 1493. As compared to Rule 11 sanctions, sanctionable conduct can only be found when there is bad faith, not mere unreasonable conduct. *See, e.g. Ross v. City of Waukegan*, 5 F.3d 1084 (7th Cir. 1993). This conduct can be either subjective or objective bad faith. *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113 (7th Cir. 1994). This Court is not required to find actual malice to issue § 1927 sanctions. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir.1984).

    C.    <u>This Court's inherent authority to issue sanctions</u>

This Court has a "well-acknowledged" inherent power to levy sanctions in response to abusive litigation practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). In fact, the existence of other rules' or statutes' sanctioning schemes do not supplant the Court's inherent power. "These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than the other means of imposing sanctions." *Chambers v. Nasco, Inc.,* 501 U.S. 32, 46 (1991). Thus, even behavior not covered by Rule 11 or 28 U.S.C. §1927 remains sanctionable if it consists of abusive litigation practice.

**III. Argument**

3

A review of Malibu's and its counsel's conduct shows that there are many instances of sanctionable behavior. The conduct is sanctionable due to objective unreasonableness under Rule 11, bad faith under § 1927, and certainly constitutes abusive litigation tactics as can be prevented by this Court's inherent authority.

A. <u>The entirety of these proceedings was based upon the sanctionable filing of frivolous Complaints</u>

Malibu and its counsel are part of a judicially recognized wave of BitTorrent suits, which seek to extract settlements rather than litigate on merits. Mr. Nicoletti represents many BitTorrent plaintiffs in Michigan and Indiana. Malibu has filed hundreds of suits across this country and named thousands of defendants. As Judge Otis Wright put it, this Plaintiff, and its counsel, have "outmaneuvered the legal system." *Ingenuity 13, LLC v. John Doe*, Order Issuing Sanctions, 2:12-c-8333-ODW (C.D. Cal May 6, 2013). The behavior of these plaintiffs is well documented in the opinions and orders of this and many other courts. Upon filing their Complaints, whose only purpose is to harvest identifying information, BitTorrent plaintiffs make settlement demands for amounts just below the cost of a bare bones defense. *Id*. When no settlement is forthcoming, plaintiffs such as Malibu engage in vexatious litigation to further attempt to coerce payment of settlements. *See Id.,* at 4. When someone engages in meaningful opposition, BitTorrent plaintiffs such as Malibu cut and run. *See, e.g. Patrick Collins, Inc. v. Oldland, et al.*, Case No. 1:12-cv-844-TWP-MJD (ECF Docs. 77, 81) (S.D. Ind.) (Attorney Nicoletti for Plaintiff who later tried to vacate the same dismissal, apparently when attorney's fees were being sought). The entirety of the system reeks of abusive litigation and raises a presumption of bad faith.

Malibu and its counsel filed a Complaint, used to harvest alleged infringer's identities. (ECF Doc. 1). They then filed an Amended Complaint with the same allegations and no further investigation. (ECF Doc. 18). The Complaints rely upon the hyper-selective and inadequate investigation of IPP, Limited. (ECF Doc. 18, ¶ 42). In this alleged investigation, IPP only identified a "piece" of the subject file coming from any given defendant, including Helferich. (ECF Doc. 18, ¶ 47). Just as it did with the other defendants in this action, IPP only looked at James Helferich for a <u>single moment in time</u> on April 7, 2012. (ECF Doc. 18-3, p. 4). Nothing indicates that Malibu, its counsel, or IPP attempted an actual investigation of Helferich in a manner sufficient to warrant filing a Complaint. In

fact, upon serving discovery that touched on this issue, Malibu chose to cut-and-run, filing a notice of voluntary dismissal.  See attached Exhibit A for such discovery.

On the face of the Complaints, it is clear that IPP did not know if Helferich downloaded a whole movie, a quarter of a movie, or just a single, unusable, encrypted piece of data.  The investigation did not attempt to determine if a usable copy was produced, or even likely to have been produced.  However, IPP and Malibu certainly could have investigated to how much of the film was downloaded.  For example, in another case before this very Court, with the same Plaintiff and same counsel, IPP was able to monitor a defendant from June 2012 to January 2013.  *Malibu Media LLC v. Tashiro*, Case No. 1:13-cv-205-WTL-MJD (ECF Doc. 13, 13-3) (Apr. 8, 2013) (later struck).  This investigation constituted nearly six-months of monitoring of a suspected infringer.  Clearly, if IPP and Malibu wanted to conduct a proper investigation of Helferich, they certainly could have done so.  In doing so, Malibu and Attorney Nicoletti could have determined if a full film was downloaded.  Instead, Malibu and its counsel proceeded on what can only be called a hunch. Rather than own up to their failure to investigate, when discovery was promulgated on this topic, Malibu and its counsel dismissed its case.

Why is this important?  To have *prima facia* case for copyright infringement, Malibu would have to show that Helferich actually copied the work.  *Feist Publ'ns Inv. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Elements of copyright infringement include copying of a work and a substantial similarity between the works.  *Selle v. Gibb*, 741 F.2d 896, 900-01 (7th Cir. 1984).  Despite its ability to do so, Malibu and its attorney chose to avoid actually determining if a copy was made, or even likely made, prior to filing suit.  It also chose to purposefully avoid determining if something substantially similar was copied, not just encrypted, unusable, zeroes and ones – the case if the alleged download was terminated for any reason.

District Court Judge Otis Wright took notice of similar "snapshots" being used in BitTorrent litigation and noted that there was no reasonable investigation prior to filing.  The pre-Complaint duty to find supporting facts is "not satisfied by rumor or hunch." *Ingenuity 13, LLC v. John* Doe, 2:12-v-8333, Order to Show Cause Re Sanctions for Rule 11 and Local Rule 83-3 Violations (ECF Doc. 48, p. 2) (C.D. Cal Feb. 7, 2013)*, citing, Bankers Trust Co. v.*

*Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992).[2] Judge Wright noted that for any number of reasons, a download may have been terminated. With termination there is no copy. With no copy, there is no infringement. *Id.* In analogizing the situation, Judge Wright stated:

> To allege copyright infringement based upon an IP snapshot is akin to alleging theft based upon a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it. No Court would allow a lawsuit to be filed based upon that amount of evidence.
>
> What is more, downloading data via the Bittorrent protocol is not like stealing candy. Stealing a piece of a chocolate bar, however small, is still theft; but copying an encrypted, unusable piece of a video file . . . may not be copyright infringement. In the former case, some chocolate was taken; in the latter case, an encrypted unusable chunk of ones and zeroes.

*Id.* at 3-4. Judge Wright went further and specifically stated, "<u>If a download was not completed, Plaintiff's lawsuit may be deemed frivolous</u>." *Id.* (emphasis added). In the end, the Central District of California found that the same failure to investigate that is before the Court today to likely violate of Rule 11 for filing a pleading that lacks factual foundation. *Id.* at 5.

Malibu and IPP filed their complaints with similar lack of investigation and, therefore, have failed to abide by Rule 11. In fact, IPP's, Malibu's, and its attorney's demonstrated ability to constantly and consistently monitor the behavior of a single purported defender – as indicated in the Tashiro[3] case above – is indicative of the fact that the failure to investigate was apparently purposefully not performed. When taken in light of the latter events in this case, as well as the judicially recognized – even by this Court – concerns regarding BitTorrent plaintiffs' litigation abuses, there appears to be bad-faith in the filing of the Complaints is also sanctionable under 28 U.S.C. § 1927 and this Court's inherent authority.

B. <u>Even when faced with sworn statement, Malibu and its counsel refused to properly investigate</u>

---

[2] While Malibu Media LLC, and its counsel, cannot be said to engage in the rampant fraud and misrepresentation to the Court's that the Prenda plaintiffs/attorneys have, the uninvestigated allegations supporting the Complaint in this case, and the *Ingenuity* case, are strikingly similar.

[3] In fact, Malibu and IPP have engaged in "enhanced surveillance" in many different cases across the country. See, e.g. *Malibu Media v. John Doe,* Case No. 1:13-cv-1195 (ECF Doc. 1-3) (C.D. Ill Apr. 25, 2013); *Malibu Media v. John Doe,* Case No. 1:13-cv-1096 (ECF Doc. 1-3) (C.D. Ill Mar. 4, 2013); *Malibu Media v. John Doe,* Case No. 1:13-cv-1200 (ECF Doc. 1-3) (C.D. Ill Apr. 26, 2013).

On May 21, 2013, Helferich submitted a Declaration to Malibu and its counsel, through filing the same with this Court. (ECF Doc. 67-2). In *Lorentzen v. Anderson Pest Control*, counsel was faced with a sworn statement that a certain chemical had not been applied. 64 F.3d 327, 329 (7th Cir. 1995). Instead of dropping the case, counsel, with no evidence to justify carrying onward, subjected the defendant to needless discovery, which ran up costs. *Id.* The attorney later dismissed the defendant from the case. *Id*.

Similarly, Helferich submitted a declaration that was not a mere denial of infringement. Rather, it stated that Helferich wasn't home, his computers couldn't have been operating at the time, and that his wireless router was likely hijacked. *Id.* Yet, Malibu and its counsel proceeded onward, unreasonably and vexatiously furthering the litigation without any attempt at further investigation. They did so with no actual evidence that Helferich engaged in any infringement, and in fact, did so while having purposefully avoided engaging in proper pre-Complaint discovery. In continuing to vexatiously and unreasonably multiply the litigation, they forced Mr. Helferich to engage in discovery, hire an expert witness, and even refused relevant discovery which forced Helferich to engage in Local Rule 37-1 mediation on discovery issues.

The similarities of the facts between these Seventh Circuit cases should lead to the same conclusion: bad-faith conduct meant to vexatiously and unreasonably multiply litigation. The similarities lead to the same end-result: sanctions pursuant to § 1927. As before, this conduct can be easily characterized as abusive litigation– as this Court has demonstrated it is concerned about – and this Court has the inherent authority to sanction Malibu and Mr. Nicoletti. Finally, in advancing the frivolous pleadings without reanalyzing them in light of the declaration, Malibu and Mr. Nicoletti have failed to abide by Rule 11.

C. <u>Filing of improper election to statutory damages</u>

On August 2, 2013, Malibu and its counsel filed their Notice of Election to Statutory damages. (ECF Doc. 79). Considering the timing, in the midst of a discovery dispute seeking the actual damages of Malibu, the filing appears contrived for the purposes of avoiding that discovery. See Exhibit B. Malibu and its counsel persisted in their refusal to withdraw their Notice of Election to Statutory damages, despite both an informal request from Helferich's counsel and a Motion regarding the same. See Exhibit C & D; ECF Docs. 81 & 82.

In *Wang v. Gordon*, a defendant wrote to a plaintiff explaining why its amended complaint was barred by existing law, and that it would seek fees and costs if litigation persisted. 715 F.2d 1187 (7th Cir. 1983). In that case, the court issued sanctions under § 1927 for counsel's attempt to manufacture claims, which it should have known did not exist, especially in light of the authority being presented to it. *Id.* Similarly, Malibu and its counsel filed and refused to withdraw the notice of election to statutory damages. Malibu's counsel, handling many BitTorrent cases, and having been notified of the defect, surely knew that such a filing was lacking in any legal support. Further, counsel and Malibu were pointed to the appropriate authority for why such a filing was inappropriate. While this particular filing was not manufacturing a claim, the timing of this election, along with its lack of basis in the law is indicative of bad faith in litigation and attempts to multiply the proceedings by attempting to avoid relevant discovery and requiring a motion to strike to be filed. Accordingly sanctions under 28 U.S.C. § 1927 are appropriate.

For the same reason, a complete lack of legal basis, the filing violates Federal Rule of Civil Procedure 11. The notice is frivolous[4] and completely bereft of support in the law. Yet was filed, and advocated for by Malibu and its counsel. Thus, this court should sanction Malibu and its counsel for its failure to abide by both Rule 11 and § 1927.

   D. <u>This Court should exercise its inherent authority to issue sanctions</u>

The above behavior did not consist solely of failures to abide by Federal Rule of Civil Procedure 11 or bad faith behavior that vexatiously multiplied the litigation. It also constitutes an appropriation of the judicial process to engage in abusive litigation to extract settlements. This Court has already recognized troubling aspects of BitTorrent litigation. *See, e.g. Malibu Media LLC v. Does 1-5*, Case No. 1:12-cv-1680-SEB-MJD, Order, p. 1 (Jan. 23, 2013) (citing cases from across the country). Malibu and its counsel (in Malibu cases and in cases with other plaintiffs such as Patrick Collins, above) have engaged in extensive amounts of abusive litigation tactics. They are

---

[4] This is hardly Attorney Nicoletti's first run-in with frivolous pleading. In *Prud'Homme v. Katzman,* Mr. Nicoletti appealed the trial court's order awarding Defendants $5,000.00 for the filing of a frivolous lawsuit "and for violating MCR 2.114(D), which prohibits signing a pleading which is not warranted by existing law or a good-faith argument for extending, modifying or reversing existing law." No. 188674, LC No. 95-021074-CK (Mich. Ct. App. 4th Dist. Mar. 7, 1997) (unpublished), attached as Exhibit E. The Appellate Court affirmed, stating that "Notably, there was evidence that plaintiff's counsel put forth his estoppel theory after defendants' counsel had pointed out the deficiencies in the initial complaint." *Id.* at 2.; Only a few years later, in *Ansley v. Conseco Fin. Serv. Corp*, et al., Nicoletti was sanctioned for putting forth a frivolous defense. No. 323266 (Mich Ct. App. Dec. 17, 2002) (unpublished), attached as Exhibit F. It is respectfully submitted that Attorney Nicoletti is lacking in credibility to assert that he would not file frivolous pleadings.

engaging in the behavior above for the purpose of "plundering the citizenry." *Ingenuity 13, LLC v. John Doe*, Order Issuing Sanctions, 2:12-c-8333-ODW (C.D. Cal May 6, 2013). The concerns the Court had in the *Malibu* case, no. 1:12-cv-1680-SEB-MJD, were well founded. In this case, the Court has seen that its worries were well-founded.

In this case the conduct has consisted of: purposefully not fully investigating claims – likely because the only real purpose is to coerce settlements; ignoring specific sworn statements clearly indicating innocence, and making no attempt to ensure that continuing forward in the case was appropriate; forcing an innocent into discovery; when a discovery dispute arose, filing frivolous papers in bad faith; and when the room starts to close in on the plaintiff and its counsel, cutting and running for the back door of the Courthouse by filing a notice of dismissal.

The entirety of this case's litigation has consisted of commandeering the judicial system to make it a cog in a business model. The business model generates revenue through abusive litigation. Considering this Court's very concerns about this happening, it would be appropriate to levy sanctions against Malibu and its counsel to attempt to prevent further abusive litigation.

E. <u>Seeking Attorney's fees, costs, and expert witness fees</u>

As indicated above, this Court can issue any sanctions it deems fit. However, in bringing his Motion, Helferich is seeking the attorney's fees he has had to incur due to Malibu's, and its counsel's, sanctionable behavior in this case. For fee awards in other cases, this Court has approved use of the American Intellectual Property Law Association's economic survey as a basis for its fee awards. *Eli Lilly & Co. v. Zenith Goldline Pharm.*, 264 F. Supp. 2d 753, 766 (S.D. Ind. 2003); survey attached as Exhibit G. As indicated in that study, the median legal fee to bring a case to trial is a quarter of a million dollars. Currently, Helferich's fees and costs are multitudes lower, and therefore are reasonable. The current amount of fees, costs, and expert witness fees is between $8,000 and $11,000 at this time.[5]

Helferich seeks his attorney's fees, costs, and expert witness fees. He intends to submit an affidavit as to these costs at such time as this Motion has been fully briefed, as it would be premature to submit an affidavit of the

---

[5] Further billing from expert witnesses make precise determination difficult at the moment. By providing a range, Helferich is allowing Malibu to challenge the amount as unreasonable, if it believes it to be so.

same if the amounts are just to increase with further litigation. Beyond this, however, Helferich defers to the Court's discretion to fashion appropriate sanctions.

## IV. Conclusion

For the reasons stated above, Helferich respectfully submits the relief sought in his Motion be granted

Dated: September 9, 2013

Respectfully submitted,

/s/ Jonathan LA Phillips
Jonathan LA Phillips
*One of Helferich's Attorneys*
Shay Kepple Phillips, Ltd
456 Fulton St.
Ste. 255
Peoria, Illinois 61602
309.494.6155 (p)
309.494.6156 (f)
jphillips@skplawyers.com

## Exhibits

| | |
|---|---|
| Exhibit A | Discovery pertaining to Malibu's failure to reasonably investigate. |
| Exhibit B | Email communication between counsels showing discovery dispute. |
| Exhibit C | Email communication from Helferich Counsel to Attorney Nicoletti informing Malibu's counsel of lack of support for Notice for Election to Statutory Damages. |
| Exhibit D | Email communication in reply to Exhibit C. |
| Exhibit E | *Prud'Homme v. Katzman*, Michigan Appellate Court order affirming sanctions against Attorney Nicoletti for filing frivolous pleadings. |
| Exhibit F | *Ansley v. Conseco,* Michigan Appellate Court order affirming sanctions against Attorney Nicoletti for filing frivolous defenses. |
| Exhibit G | AIPLA Economic Survey |

## CERTIFICATE OF SERVICE

I certify that on September 9, 2013 a copy of the foregoing Memorandum was served to all relevant parties by:

Paul J. Nicoletti
NICOLETTI & ASSOCIATES, P.C.
36880 Woodward Ave.
Suite 100
Bloomfield Hills, MI 48304
*Attorneys for Plaintiffs*
By Electronic Means of Filing through ECF.

James Dimos
Frost Brown Todd LLC
201 North Illinois Street, Suite 1900

Indianapolis, IN 46244-0961
*Limited counsel for Ernest Nurullaeva*
By Electronic Means of Filing through ECF.

ERNEST NURULLAEVA
1555 McCollough Drive
Indianapolis, IN 46260
*Pro se*
By US Mail

/s/ Jonathan LA Phillips
Jonathan LA Phillips
Shay Kepple Phillips, Ltd
456 Fulton St.
Ste. 255
Peoria, Illinois 61602
309.494.6155 (p)
309.494.6156 (f)
jphillips@skplawyers.com