UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN MCSWEENEY, CHARLIE TOLLEY, JEREMIAH MCKINNEY, JAMES HELFERICH, ERNEST NURULLAEVA, an JOHN DOE 1 and 7,<br><br>Defendants. | Civil Action No. 1:12-cv-00842-TWP-MJD |

**REPLY MEMORANDUM IN SUPPORT OF:
MOTION TO ISSUE SANCTIONS**

## I. Introduction

On September 9, 2013, Defendant Helferich filed his Motion to Issue Sanctions.  (ECF Doc. 90).  On Septebmer 23, 2013, the Plaintiff, Malibu Media, LLC ("Malibu") filed its Response.  (ECF Doc. 101).  Malibu's Response does not provide this Court any reasonable basis to deny Helferich's motion.  This Court ordered that this Reply be filed on or before August 4, 2013.  (ECF Doc. 104).

## II. The Correction of Incorrect Factual Assertions by Malibu

In its Response, Malibu makes several incorrect factual assertions and attempts to twist facts in manners befitting only a contortionist.  Further, in doing so, Malibu does not provide any evidence of its version of the facts.  The Motion has merit, and Malibu's resorting to twisting of facts in order to avoid being sanctioned is indicative of the same.

Helferich stands by his declaration that he was not served in this matter.  The process server's return is facially incorrect.  Malibu does not contest that Helferich is bald.  Malibu apparently reviewed Helferich's Facebook page and made certain assertions regarding its findings.  However, it did not supply any pictures from Facebook it supposedly relies upon to indicate that bald hair is now brown.  It did not provide the dates the pictures were taken either, providing only he alleged dates of posting.  If Malibu did review the Facebook pictures, they would show that

1

the weight on the return of service is clearly incorrect. Thus, Malibu's half-hearted reliance upon a brief review of limited Facebook pictures serves to further demonstrate that Helferich was not served.

Additionally, Malibu has not supplied this Court with the response to discovery that shows that Helferich is the high-level network analyst Malibu portrays him as. This is because a review of that discovery would show nothing but a low-level technical degree and a single low-level entry position regarding computer networks.

The end of infringing activity is easily explained by the securing of Helferich's router, which was unsecured by default, as many routers are. (ECF Doc. 67-2, ¶ 12). Further, the fact that speeds increased afterwards is indicative of the hijacking of the router. *Id.* ¶ 13. Yet, rather than accept the clear possibility of the same and investigate, Malibu continues to twist facts.

Along with its misunderstanding of computer related job descriptions, Malibu insists that it would be difficult to inspect a custom built computer. This is simply false. A hard-drive is a hard-drive, no matter the computer it is in. The analysis, and the cost of the same, would be exactly the same regardless of what type of computer the hard-drive is placed in. Attorney Nicoletti, and Malibu, having hundreds of these cases, should know that this to be true.

As demonstrated, Malibu has turned to contorting facts to attempt to show that it should not be sanctioned. It is respectfully submitted that this Court should proceed forward based upon the facts as they appear on the record, or can be fairly inferred otherwise. This Court should not proceed in its analsysis based upon unsupported and twisted assertions of fact.

### III. Pre-Investigation

Helferich put forth his position that there was inadequate investigation prior to filing a Complaint in this matter. On the face of the Complaint, there is a single snapshot of allegedly infringing activity tied to an IP address, not to Helferich. In Response, Malibu has supplied its Exhibit A, a document never before disclosed.[1] (ECF Doc. 101-1).

---

[1] This information was sought in discovery, but unfortunately, Malibu unilaterally dismissed its suit prior to providing the information. Thus, to be fair, it may be inappropriate to surmise it did not have this information as late as August, 2013 based upon non-disclosure alone.

2

Malibu's Exhibit A does not show, nor does it purport to show, that an adequate investigation **prior** to the filing of the frivolous Complaint was made. Nothing in Malibu's Exhibit A suggests that it was generated, or the data contained within it was from at time, prior to the filing of the suit. There is no affidavit regarding when this data was secured and reviewed. Surely, this information would have been part of the Complaint if it were available and investigated at the time of filing.

Further, even if Malibu's Exhibit A was reviewed prior to the filing of the Complaint, it still fails to provide evidence of a reasonable investigation. The file associated with the Hash Number in question is 29.15 Gb in size. Malibu has not indicated how many peer infringers were allegedly available. However, the most popular torrent sites indicate that there were not enough seeders – and therefore, download times were as long as two weeks, if not longer. See attached Exhibit B.[2] Additionally, the average download speed in Indiana is only 6775 kilobytes per second.[3] BitTorrent clients do not make use of the full bandwidth available to a subscriber. Nor would a computer be expected to be consistently downloading a file all the time. Further, this particular swarm was slower than most. See Exhibit B. Therefore, it is not likely that the full file would have been downloaded within the time period shown in Malibu's Exhibit A.

IPP, Ltd. knew of this extremely large file. It also should have known the swarm speeds. With this knowledge IPP, Ltd. knew or should have known that a week was likely not enough time to actually copy the work. Knowing that there needed to be an extended amount of time to actually copy the film, IPP ccould have, if it wished to do so, actually verified whether or not Helferich's IP address had a full, workable, copy of the film by attempting to download the whole file from his IP address. It purposefully did not do so. Malibu and IPP purposefully avoided fully investigating the facts before filing.

Considering the nature of these proceedings, and similar proceedings, it is quite likely that this information was not generated and reviewed prior to the filing of the Complaint. Rather, it is likely only being generated now, as

---

[2] One especially troubling aspect of Exhibit B is that the torrent files were created on December 22, 2010. Thus, the site rip was available for download well before the alleged first date of publication of "Just the Two of Us" and "Tiffany Teenagers" and the very day of "Leila Sex On the Beach." This is discussed further below as part of the failure to reasonably investigate, both in making a false filing as to first date of publication and as to election to statutory damages.

[3] Speedtest.org, *2010 Report on Internet Speeds in All 50 States*, available at http://www.speedmatters.org/content/internet-speed-report/ (last accessed Oct. 4, 2013)

a way of avoiding appropriate sanctions.  Again, it is worth noting that no affidavit or indication of when the this data was generated or consulted was provided to this Court.  However, even if it was consulted prior to the filing, it still doesn't show that the download was completed – a fact IPP, Ltd. intentionally chose not to verify despite the unlikelihood of a successful copy being made within the timeframe asserted.

For these reasons, it is respectfully submitted that, in spite of Malibu's newly disclosed Exhibit A, there was no adequate investigation prior to the filing of the Complaint.

### IV. The Election to Statutory Damages Remains Frivolous

Prior to filing its Motion to Issue Sanctions, Helferich had filed a Motion to Strike the Notice of Election to Statutory Damages.  (ECF Doc. 81).  Helferich supplied a memorandum in support of that Motion.  (ECF Doc. 82). Malibu never filed a response.  Helferich does not dispute that a party can elect to statutory damages before judgment, and that a work that is registered prior to infringement is eligible for such election.  However, that is not the situation before the Court today.

Section 412 of the Copyright Act bars an award of statutory damages when infringement commenced prior to registration.  When there is continuing infringement, courts have held that in determining whether or not a work is infringed prior to registration, the Court should consider commencement of infringement as taking place on the first date of infringement.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700-01 (9th Cir., 2008), *quoting, Johnson v. Jones,* 149 F.3d 494, 506 (6th Cir. 1998) ("Every court to consider the issue has held that "infringement `commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs"); *accord, Whelan Assoc., Inc. v. Jaslow Dental Lab., Inc.* 609 F.Supp. 1325, 1331 (E.D.Pa. 1985) ("Interpreting `commencement of infringement' as the time when the first act of infringement in a series of on-going discrete infringements occurs ... would best promote the early registration of a copyright.").  This first date of infringement is the first act in a series of acts.  *Id.*

This case involves continuing infringement.  Malibu went to great lengths to demonstrate the interdependent nature of BitTorrent swarms.  *See,* Pltf's Comp., ¶¶ 11, 17 – 37.  In doing so, Malibu has essentially claimed that the large, amorphous, swarm of alleged infringers were constantly infringing by simultaneously

downloading and uploading to each other. In fact they are alleged to be "working together" in the swarm to accomplish the infringement. *Id.*, ¶ 35. This swarm is identifiable by its Hash Number BE309EAAEA62390FF5E35F4B018E7D1C89C51A30. *Id.*, ¶ 41. On the face of the Complaint, all infringement in that Hash Number is a continuing infringement of that first in the series of infringements. Therefore, the question is what is the first date of infringement?

A simple Google search for the Hash Number shows that the file was being infringed as early as December 22, 2010 on the most popular of BitTorrent index sites. See Exhibit B.[4] Without even looking at the multitudes of cases in other district courts involving the same Hash Number – which would likely show an even earlier date of detected infringement – the compiled Work was detected, in this action, as being infringed as early as March 16, 2012 by Charlie Tolley.[5] (ECF Doc. 18-3). Thus, within this very action, there was a <u>detected</u> infringement well before the registration date of at least one film.[6] Necessarily, there was an even earlier alleged infringement that took place – the downloading of the piece of film later uploaded to IPP, the upload being the date of detection.

**In fact, this Hash value has been being infringed as far back as December 22, 2010**. Accordingly, not only are the allegations that "Just the Two of Us" and "Tiffany Teenagers" and "Leila Sex On the Beach" being published published after December 22, 2010 bold faced lies – otherwise how could the site rip have occurred? – it means that registrations had to occur before that date in order for statutory damages to be available. Thus, no work was registered prior to the date of infringement.

Because none of the films, that all must be looked at as a single work, were registered prior to the date of the "first in a series of acts" – easily discoverable by a Google search, none are eligible for statutory damages.

---

[4] Exhibit B is partially redacted to prevent the filing of pornographic images with the Court.
[5] A review of this case, and other cases, shows that Malibu's date of infringement is nothing more than the first detected incident of infringement. Before IPP could have detected an upload, the alleged infringer would have had to download the same piece of the film. Thus, it is likely that the alleged infringers infringed well before the dates listed by Malibu in any case.
[6] There is a one-grant-of-statutory-damages limitation in the Copyright Act. The last sentence of § 504(c)(1) states that, in determining the number of statutory damage grants that can be awarded, "all the parts of a compilation or derivative work constitute one work." 17 U.S.C. §504(c)(1).[6] For example, if ten individually copyrighted songs were placed on a single CD by a plaintiff, and a defendant illegally copied that CD, the Plaintiff would be allowed only one statutory damage award. *See, Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 192-93 (1st Cir.2004); *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143-44 (5th Cir. 1992); *accord, Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1381 (2d Cir.1993). Malibu has compiled the films onto a website, just as a musician would on a CD. Thus, if one portion of the combined work is not actionable, the others should not be either.

Even if this Court looked only to this action, it would find that infringement occurred prior to the date of registration for one film and under 17 U.S.C. § 504(c)(1) the election would be barred. Despite the resources of IPP, Ltd., despite the bold faced false statements as to dates of publication, and despite litigating hundreds of these cases, neither Malibu nor its Counsel investigated the law and facts that show that no election could be made.

### V. *Wang v. Gordon* is applicable to the case at hand

In his Motion, Helferich put forth that the inappropriate filing of a notice of election for statutory damages constituted actions similar to those in *Wang v. Gordon*. 715 F.2d 1187 (7th Cir. 1983). Malibu states, just as Helferich did, that the *Wang* case involve the manufacturing of a claim. However, in doing so, Malibu asserted that *Wang* its inapplicable to the case at hand.

Curiously, Malibu does not dispute all of the other similarities between *Wang* and the case at hand. Malibu does not dispute that its counsel was provided with authority showing a frivolous filing without basis in law. Malibu does not dispute that it was given time to withdraw the filing. As to the core issues at hand, *Wang* is applicable to this case even if it involved a different type of filing.

### VI. *Lorentzen* is analogous to the case at hand

In his Motion, Helferich points to *Lorentzen v. Anderson Pest Control*, 64 F.3d 327 (7th Cir. 1995) to show that a party's failure to reasonably investigate a claim prior after being provided evidence that no claim exists is sanctionable behavior. Malibu has attempted to distinguish the case.

For the reasons stated above, and in the Memorandum in Support of the Motion to Issue Sanctions, it is respectfully submitted that the declaration of Helferich is a clear, unequivocal, detailed, and pointed showing that Helferich did not infringe. It was not a mere denial. If the Court accepts this, as it should, it means the only distinguishing characteristics put forth by Malibu are the length of litigation and resources spent. It is true, this case has not been as expensive as the *Lorentzen* case. However in that case, ongoing businesses with the means to defend such cases were involved. In contrast, Helferich is an individual of limited means. Further, the nature of BitTorrent infringement cases has been judicially recognized to consist of a business model where the Plaintiff prevails primarily because of the concern that fighting the case is too expensive for individuals.

Accordingly, it is respectfully submitted that the *Lorentzen* case is analogous to the one at hand. Being analogous, Malibu should have conducted further investigation before proceeding onward, just as *Lorentzen* instructs. For example, Malibu could have noted the close proximity of neighbor's homes to Helferich's. It did not. It could have measured wireless signal strength in the area and noted that neighbors could have accessed Helferich's wireless internet. It did not. Perhaps it could have determined if the file was actually fully downloaded – by downloading a copy from Helferich and Helferich alone. It did not. Therefore, this Court should find Malibu's behavior to be sanctionable as requested in the Motion.

**VII. Rule 11 sanctions should remain available in this case**

It is true that Federal Rule of Civil Procedure 11 contains a twenty-one day safe harbor provision, as Helferich noted in his Memorandum in support of the Motion. However, it remains the position of Helferich that this case should serve as an exception to the general rule. The BitTorrent litigation model and the particular circumstances of this case both justify a departure from the strict letter of the rule.

The judiciary has recognized that a fundamental aspect of the BitTorrent copyright infringement Plaintiff's business model is to collect nuisance value settlements. By allowing frivolous Complaints to be filed without consequence – as any Plaintiff facing a fight can just cut and run – the BitTorrent Plaintiffs would have no reason to actually engage in investigation prior to filing. Thus, this Court would invite further abuse of the judicial process for business purposes.

Further, unlike the authority put forth by Malibu, this case was not dismissed by agreement of the parties. This case was unilaterally dismissed by Malibu. Malibu was able to take advantage of the fact that Helferich was unable to file an answer until resolution of his pending Motion to Vacate. This particular factual situation justifies an examination of whether or not this Court has discretion to issue Rule 11 sanctions despite the failure to comply with the 21-day provision.

In the alternative, Helferich would note that the 21-day safe harbor provision does not affect the right of this Court to impose sanctions on its own, pursuant to Rule 11. Fed. R. Civ. P. 11(c)(3).

**VIII. Fees**

7

Helferich is seeking, as part of any other sanctions this Court may fashion, his attorney's fees and costs in litigating this matter, which to date, consist of $12,087.41. A declaration regarding the same is attached hereto as Exhibit A.

### IX. Conclusion

For the reasons stated above, Helferich respectfully submits the relief sought in his Motion be granted.

Dated: October 4, 2013

Respectfully submitted,

/s/ Jonathan LA Phillips
Jonathan LA Phillips
*One of Helferich's Attorneys*
Shay Kepple Phillips, Ltd
456 Fulton St.
Ste. 255
Peoria, Illinois 61602
309.494.6155 (p)
309.494.6156 (f)
jphillips@skplawyers.com

### CERTIFICATE OF SERVICE

I certify that on October 4, 2013 a copy of the foregoing Memorandum was served to all relevant parties by:

Paul J. Nicoletti
NICOLETTI & ASSOCIATES, P.C.
36880 Woodward Ave.
Suite 100
Bloomfield Hills, MI 48304
*Attorneys for Plaintiffs*
By Electronic Means of Filing through ECF.

/s/ Jonathan LA Phillips
Jonathan LA Phillips
Shay Kepple Phillips, Ltd
456 Fulton St.
Ste. 255
Peoria, Illinois 61602
309.494.6155 (p)
309.494.6156 (f)
jphillips@skplawyers.com