## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. <u>1:12-cv-00842-TWP-MJD</u> |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN MCSWEENEY, CHARLIE | ) | |
| TOLLEY, JEREMIAH MCKINNEY, JAMES | ) | |
| HELFERICH, ERNEST NURULLAEVA and | ) | |
| JOHN DOE 1 and 7, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES [CM/ECF 95]

### I.   INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's Motion for Attorney's Fees. First, Defendant had the opportunity to answer Plaintiff's Complaint and his failure to do so provides Plaintiff with the absolute right to dismiss.  Because Plaintiff dismissed Defendant through a notice, without prejudice, Defendant is not the prevailing party.   Under the Copyright Act, only prevailing parties are entitled to an award of fees.   Further, allowing Defendant to recover his fees without an adjudication on the merits would violate the spirit of the Copyright Act.

For all the foregoing reasons, as set forth below, this Court should deny Defendant's motion for fees.

II.    **FACTS**

    A.  **Procedural History**

On June 18, 2012, Plaintiff filed this action for copyright infringement against seven defendants.  Shortly thereafter, the Court granted Plaintiff's Motion for Leave to Serve a Third Party Subpoena and entered an order allowing Plaintiff to subpoena Comcast Communications in order to discover the identity of the alleged infringers.  *See* CM/ECF 7.  On September 27, 2012, after notifying each of its subscribers of the pending law suit, Comcast provided Plaintiff with the subpoena response, identifying among others, Defendant James Helferich ("Helferich") as John Doe #5 in this law suit.

Pursuant to your Honor's order [CM/ECF 11], Plaintiff promptly amended its Complaint on October 3, 2012 to name Helferich and on November 1, 2012 Helferich was served.  *See* CM/ECF 36.   Despite having been notified of the suit by Comcast and then being personally served with the Amended Complaint, Helferich ignored the lawsuit.  Indeed, several months passed without an answer and on April 24, 2013 the Court entered a default judgment in the amount of $35,760.00.

Once Helferich realized that a monetary judgment had been entered against him, he immediately responded and within two weeks of the default judgment being entered, counsel appeared in this matter on his behalf.

    B.  **Defendant Either Perjured Himself Or His Counsel Submitted a Motion in Bad Faith**

On May 21, 2013 Defendant filed a Motion to Quash Service & to Set Aside Default Judgment ("Motion").   *See* CM/ECF 67.  Attached to that Motion, Helferich filed a declaration claiming, among other things, that "I was never served with a subpoena".  *Id*. at 67-2, ¶7.  It also stated, "[t]he first time I became aware of my duty to participate in the proceedings was my

2

receipt of a default judgment." *Id*. at ¶8.  Noteworthy, the clerk would have mailed Helferich notice of the Clerk's entrance of a default judgment over two months before Plaintiff filed for final default judgment.

In Helferich's motion, he argues, "[h]e was not served, something he would have taken note of were it to occur, being aware of the consequences of service."  CM/ECF 67-1 at *5 citing CM/ECF 67-1 ¶7.  He also states, "[a]ny presumption of proper service has certainly been overcome by the declaration provided, and the clear inaccuracy of the return of service."  *Id*.  He claims that the process server's report acts as evidence that he was not served because it lists his hair as "brown" and identifies him as 180lbs instead of 250lbs.  Counsel for Helferich puts forth this argument unaware that Helferich had signed the notice of service.  *See* CM/ECF 69 Ex. A. It is strikingly similar to the signature on his declaration.  And, Facebook photos of his from November 2012 show that he had a beard and brown eyebrows, making a logical conclusion that his hair was "brown"[1].

While Mr. Helferich did not expressly deny service, his counsel certainly used his declaration as evidence to argue improper service.  Ultimately, Defendant's motion was filed in bad faith, when service was properly effectuated.   Significantly, Plaintiff's process server has served dozens of others defendants that properly filed answers, including defendants in this case. And, Plaintiff's process server would have no opportunity, nor motivation, to know Defendant's signature before serving him.  Defendant, however, had significant motivation to put forth a dishonest argument in the hopes of vacating his default judgment.

---

[1] Plaintiff has not included pictures of Defendant from his Facebook page out of respect for Defendant's privacy.  That being said, should the Court wish to view these pictures Plaintiff will submit them.

### C.  Defendant Failed to File an Answer

Aware that this Court favors resolving cases on their merits, Plaintiff did not oppose the Motion to Vacate the Default Judgment.  Plaintiff did, however, identify Defendant's bad faith in filing the motion.  *See* CM/ECF 69.  Defendant replied and stated that the signature was not his, but conspicuously made this comment through counsel, absent a declaration, and failed to in anyway elaborate.   At no point in time did Defendant ever file an answer.

### D.  Plaintiff Has Substantial Evidence Against Defendant

Plaintiff's evidence against Helferich is significant.   Specifically, IPP, Plaintiff's investigator, recorded Helferich infringing the siterip in this case for a period of 8 days.  *See* CM/ECF 101, Exhibit A.   This is a far greater time than Helferich's accused "snapshot".  Further, Helferich downloaded another siterip containing Plaintiff's movies just a few weeks later.  *Id*.   And, Plaintiff informed Helferich that it had recorded this infringement for a substantial period in its response to interrogatories.  *See* Plaintiff's Response to Defendant's Interrogatories at ¶ 4.

While the siterip at issue in this case contained a large amount of Plaintiff's movies in one file, eight days is more than enough of a period to complete the transaction and distribute to other infringers, inflicting substantial harm on Plaintiff.   Indeed, BitTorrent is a popular file sharing service mainly because of its speed and ability to download large amounts of content in a short period of time.

Helferich stated in his interrogatories that he had a far superior knowledge of computers, including a technical degree in Computer Networking Systems.  See CM/ECF 96 -2 at *2.  And, he built his own computer.  *Id*. at *3.  His primary job is in system monitoring and in the past he has worked as a computer technician.  *Id*. at *2.  ("Worked …for three months as a Systems

4

Analyst with System Monitoring as my primary job description".)  Helferich's defense is that he was not at home during the time of infringement and it was his neighbors.

Despite monitoring networks for a living, Helferich states that he did not know his network lacked a password.  He also states he did not know who was using his Internet.  Further, Helferich's declaration states that "during the time I was alleged to have participated in the so-called 'swarm', I was out of town, visiting in-laws."  But, his interrogatories state that he was at home that morning, and did not leave until later that day.  Specifically, his interrogatory says:

> As already provided in my declaration, no one would have been home that day for the majority of the day.  Only my wife and I would have had access, if any, to the afore mentioned "Computer Devices." Such access would have been to check a recipe for something being cooked in the morning to take to Easter celebrations at my in-laws. We would have left sometime in the morning and been gone the entirety of the day.

*See* Helferich's Response to Interrogatories at #10.  Helferich is referring to April 7th, 2012.  The last date of recorded activity for the swarm by Helferich was on April 7, 2012 at 10:21:11 EST.  The infringement had been on-going for eight days at that point and appeared to have stopped later that day.  That is consistent with Helferich's story.  Helferich's declaration, therefore, does not in any way absolve him of guilt.

### E.  Helferich's Expert Does Not Exonerate Him

Helferich's forensic expert only examined his hard drives for evidence of Plaintiff's movies.  *See* CM/ECF 96-3.  Not surprisingly, given Helferich's background and expertise in computers, and that he built his own computer, Helferich's paid expert did not find Plaintiff's movies.  Helferich's expert does not provide any indication that the two hard drives he examined were in Helferich's possession at the time of the infringement, nor does he state whether he examined the hard drives for evidence of tampering or wiping the drives clean, other than looking for Plaintiff's movies.  *Id.*

Indeed, in the Bellwether trial, a similar defendant to Helferich, Bryan White, also built his own computer.  *See Malibu Media v. John Does 1, et. al.*, 12-cv-02078, CM/ECF 170 (E.D. Pa. June 3, 2013), Exhibit A.  And, Bryan White showed to the Honorable Judge Baylson how there were no traces of Plaintiff's movies on his computer, nor did there ever appear to be.  That being said, Plaintiff's expert was able to determine that the hard drive system had been placed on the hard drive three days after Plaintiff served its discovery requests.  *Id*.  And, Microsoft's business records further verified this information.  *Id*.  Even though Mr. White had gone to great efforts to include files dating from before the time he wiped his hard drive clean, the hard drive system revealed that he had tampered with his computer and deleted evidence.  *Id.*  Helferich's expert does not rule out the very real possibility that this is the case here.  Moreover, Helferich states that one of his hard drives was originally obtained from his brother in law.  *See* CM/ECF 96-2 at *3.  It is possible the hard drive he provided his expert was not even the hard drive in his computer at the time of infringement.

Finally, Helferich's expert report is disingenuous when Helferich stated to Plaintiff in response to Plaintiff's request for production of documents that it was "burdensome and oppressive" to produce a copy of his hard drives to Plaintiff.  *See* CM/ECF 96-3 at *2.  Despite refusing to comply with Plaintiff's discovery, he produced a copy for his expert – and never even volunteered to provide that copy to Plaintiff's expert for his own analysis.

### F.  Helferich's Map of his Wi-Fi Range Does Not Exonerate Him

Helferich's map showing the range of his Wi-Fi points to, at best, three or four homes that may have had access to the Wi-Fi.  *See* CM/ECF 96-3.  Helferich does not indicate whether any of his neighbors possessed the motive or capabilities to download the files.  And, the farther away one is from a Wi-Fi signal, the weaker the signal.  It is not clear that any of his neighbors

would have been able to download the files, even if they were in the range of the wireless signal. The length of time of the infringement further demonstrates that it was a resident and not a guest or passerby.

### G.  Plaintiff Complied with Discovery

Plaintiff complied with a substantial amount of Defendant's discovery requests and had supplemented its response to Defendant's interrogatories three times.  At the time when Plaintiff decided to dismiss its suit against Defendant, Defendant was sending undersigned multiple emails a week (sometimes multiple emails per day) demanding Plaintiff turn over various amounts of information.

Significantly, Helferich was demanding that Plaintiff provide "the amount of revenue generated by actual sales, distribution, and all other manners of revenue generation other than by copyright infringement suits in federal courts, trespass to chattels suits in state courts, and settlements or verdicts regarding the same, whether had before or after actual service of summons, with regards to each of the fifteen films alleged to have been part of the swarm participated in by Defendant Helferich, and break down that revenue into applicable categories, to the best of your ability." *See* CM/ECF 101 Ex. B.  Helferich was demanding that Plaintiff submit that to him in a matter of days or threatening to file a Motion to Compel.  The amount of time and effort to respond to this request, particularly in an amount of days, would cause Plaintiff to expend significant expense.  This is on top of the numerous motions that Plaintiff would have to respond to filed by Defendant, as well as the costs for its forensic investigator to examine a self-made computer.  Indeed, Plaintiff knew firsthand the costs from the Bellwether trial.  *See Malibu Media, LLC v. John Does 1, 6, 13, 14,* CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa.

June 18, 2013) ($128,350.50 in fees awarded to Plaintiff).  Plaintiff also knew that it was not likely that Helferich had the resources to ever enable Plaintiff to recover.

Plaintiff simply did a cost-benefit analysis of the case and determined that while it believed Defendant to be the infringer, and the evidence certainly supported it, the deterrence of a federal law suit would likely prohibit Helferich from ever stealing its movies again.  But, to continue the case and expend hundreds of thousands of dollars and at the same time, potentially bankrupt Helferich with a later award of attorneys' fees, was not in either party's best interests.  Given that Helferich had failed to file an answer and Plaintiff had an absolute right to dismiss, Plaintiff thought that this course of action best suited its goals.

## III.   DEFENDANT HAD THE OPPORTUNITY TO FILE AN ANSWER AND FAILED TO DO SO

Defendant's argument that he was barred from filing an answer is incorrect.  Indeed, the Seventh Circuit has expressly held that filing an answer after a default has been entered may cure the default and is a factor a court should consider when determining whether to vacate.  *See Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988) ("[Defendant] promptly attempted to cure its default by filing its proposed answer and counterclaims"); *see also Matter of Busick*, 719 F.2d 922, 926 (7th Cir. 1983) ("Clearly, appellant acted promptly to cure the defect by filing an answer … [t]here is no indication in the record that the default was willful.")  This is consistent with other courts throughout the country.  *See e.g. Marks v. Gephardt*, C07-5259RJB, 2007 WL 4269803 (W.D. Wash. Dec. 3, 2007) ("Defendants may be technically in default at this time, however, the filing of an answer on November 9, 2007, is an attempt to cure the default.")

8

## IV.   PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL WAS ITS ABSOLUTE RIGHT

Because of Defendant's failure to answer or file for summary judgment, Plaintiff had an absolute right to file a voluntary dismissal.  "[O]ne doesn't need a good reason, or even a sane or any reason, to dismiss a suit voluntarily. The right is absolute, as Rule 41(a)(1) and the cases interpreting it make clear." *Marques v. Fed. Reserve Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002).  "[T]his rule accords to the movant an absolute right of dismissal without prejudice if no answer or motion for summary judgment has been filed." *United States v. E. I. du Pont de Nemours & Co.*, 13 F.R.D. 490, 495 (N.D. Ill. 1953).  "The effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) ... is to render the proceedings a nullity and leave the parties as if the action had never been brought." *Kurz v. Fid. Mgmt. & Research Co.*, 07-CV-592-JPG, 2007 WL 2908918 (S.D. Ill. Oct. 4, 2007).

Because Plaintiff's right to voluntary dismiss is absolute, the amount of time and work expended by a defendant is not relevant to the dismissal.  "Courts have refused to weigh the amount of effort expended by the defendant or the district court, instead holding that 'rule 41(a)(1) means what it says.'" *Am. Soccer Co., Inc. v. Score First Enterprises, a Div. of Kevlar Indus.*, 187 F.3d 1108, 1111 (9th Cir. 1999); *see also Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977) (finding the amount of effort expended by Defendant to be irrelevant and noting: "Defendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under rule 41(a)(1) may do so by taking the simple step of filing an answer"); *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1067 (3d Cir. 1987) (reversing an award of attorney's fees).

## V.   DEFENDANT IS NOT THE PREVAILING PARTY

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award a reasonable attorney's fee to the <u>prevailing</u>

<u>party</u> as a part of the costs."  17 U.S.C. § 505.  (Emphasis added).  The Copyright Act does not define the term "prevailing party" and, accordingly, it must be construed with "general principles of law."  *See 6 Patry on Copyright § 22:211.*

In *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598 (2001) the Supreme Court announced that a party prevails when there has been "a material alteration of the parties' legal relationship."  *Id.* at 603.  *Buckhannon*'s "material alteration" test is used in the context of the Copyright Act for purposes of determining who is a prevailing party entitled to an award of costs and attorney's fees.  *See Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008); *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009); *Interscope Records v. Leadbetter*, 2007 WL 2572336 (W.D. Wash. 2007) *aff'd*, 312 Fed. Appx. 50 (9th Cir. 2009).

"[A]s *Buckhannon* explained, there must be a court-ordered change in the legal relationship between the parties." *Southworth v. Bd. of Regents of Univ. of Wisconsin Sys.*, 376 F.3d 757, 771 (7th Cir. 2004).  "In other words, 'there must be a judicial imprimatur on the change.'"  *Walker v. Calumet City, Ill.*, 565 F.3d 1031, 1034 (7th Cir. 2009).  Here, Plaintiff dismissed Defendant through a notice, without a Court order.  Therefore, there was no judicial imprimatur.  For these reasons, courts traditionally hold that a defendant is not entitled to attorney's fees when dismissed by notice without prejudice.

### A. Courts in the Seventh Circuit Consistently Find That A Dismissal Without Prejudice Does Not Make Defendant A Prevailing Party For Purposes of Fee Shifting

"[A] dismissal without prejudice does not render the defendant a prevailing party for purposes of the fee-shifting statutes." *Zila Swab Technologies, Inc. v. Van Dyke*, 01 C 8729, 2003 WL 1745901 (N.D. Ill. Apr. 1, 2003). "[A] dismissal without prejudice does not 'bestow prevailing party status on [claimants] because it effect[s] no 'change in the legal relationship of

10

the parties.'"  *United States v. Approximately $3,174.00 in U.S. Currency*, 928 F. Supp. 2d 1040 (E.D. Wis. 2013).  "A dismissal without prejudice under Rule 41(a)(1)(i) does not decide the case on the merits."  *Id.*

The Copyright Act expressly allows fee recovery only to a defendant that is the prevailing party.  *See* 17 U.S.C. §505.  "Because Defendant is not a prevailing party, he is not entitled to attorney's fees."  *Malibu Media v. Jeremy Cotton, et. al.*, 12-cv-00845, (S.D. In. April 29, 2013)   Here, because Helferich was dismissed without prejudice, Helferich is not the "prevailing party" under the Copyright Act.  *Id.*

**B.  Defendant's Cases Are All Distinguishable or Inapplicable**

Defendant relies on *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S. Ct. 2447, 2456, 110 L. Ed. 2d 359 (1990) for the premise that the Court retains jurisdiction to award fees when a defendant is dismissed without prejudice.  While this may be true, Defendant is still not the prevailing party.  Indeed, *Cooter & Gell* retained jurisidiction for the purpose of awarding fees under Rule 11.  As Plaintiff has previously briefed, Helferich cannot be awarded fees under Rule 11 because he did not comply with the safe harbor.  *See* CM/ECF 101.

Defendant's reliance on *Sequa Corp. v. Cooper*, 245 F.3d 1036, 1038 (8th Cir. 2001) is also misplaced.  First, in *Sequa Corp.*, the Eighth Circuit's holding was limited to costs and not attorneys' fees.  *See Id.* at 1037 ("[A] voluntary dismissal without prejudice under Rule 41(a)(1)(i) does not deprive a District Court of its authority to award costs.").  Here, Defendant has not demonstrated he is entitled to any costs pursuant to 28 U.S.C. § 1920.  Indeed, none of his requests for compensation fall under the list of approved costs.

Second, the Eighth Circuit expressly disagreed with the district court that the defendant was the "prevailing party" after a voluntary dismissal without prejudice.  "Though we disagree

with the court's conclusion that Sequa's voluntary dismissal of the action made defendants prevailing parties, we note that Rule 54(d)(1) simply provides that ordinarily costs *shall* be allowed 'as of course' to the prevailing party 'unless the court otherwise directs.'" *Id*. Indeed, the court reasoned that the relevant statute in which the defendant was seeking costs, namely Rule 54(d)(1) permitted it in some circumstances where the defendant is not the prevailing party. "We do not read Rule 54(d)(1) as impairing the inherent authority of a trial court to award costs incurred in defending an action prior to its voluntary dismissal by the plaintiff, even though a voluntary dismissal without prejudice means that neither party can be said to have prevailed." *Id*. at 1037-38. But, here, the Copyright Act expressly limits a fee award to the prevailing party.

Finally, the reasoning relied upon in *Sequa* is contrary to Seventh Circuit precedent, which states, "[r]ule 41(a)(1)(i) prevents an award of 'costs' against the party who dismisses the suit voluntarily." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987); see also *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009) ("A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief"). Here, Seventh Circuit precedent prevents any award of costs to Defendant.

## C. Public Policy Supports Denying Defendant Fees

"[T]he right of voluntary dismissal is still a vital policy of federal procedure and is one of the consequences to which all federal cases are subject." *Miller v. Stewart*, 43 F.R.D. 409, 411 (E.D. Ill. 1967). If the Court were to allow Defendant to recover fees on the basis of a voluntary dismissal without prejudice, plaintiffs will no longer be able to rely on the premise that a notice of dismissal without prejudice is absolute, and a plaintiff can dismiss its case without consequence. Indeed, the concept that "[a] voluntary dismissal without prejudice leaves the situation as if the action had never been filed" *Beck v. Caterpillar Inc.*, 855 F. Supp. 260, 264

(C.D. Ill. 1994) will no longer be true.  Plaintiffs may continue claims they no longer wish to pursue, as would Malibu Media here, in order to avoid fee liability.

Further, because there has been no adjudication on the merits, an award of fees to Defendant would violate the spirit of the Copyright Act.  Indeed, the Supreme Court has held that a fee award must be "faithful to the purposes of the Copyright Act".  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535, 114 S. Ct. 1023, 1033, 127 L. Ed. 2d 455 (1994).  Allowing a Defendant that is likely liable for infringement to obtain an award of fees simply because Plaintiff dismissed its suit, as an absolute right, would violate the purposes of the Copyright Act.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion for attorney's fees.

Dated:  October 4, 2013

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:    /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorney for Plaintiff*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:    <u>/s/ *Paul J. Nicoletti*             </u>
                Paul J. Nicoletti, Esq. (P44419)