UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN MCSWEENEY, CHARLIE TOLLEY, JEREMIAH MCKINNEY, JAMES HELFERICH, ERNEST NURULLAEVA, an JOHN DOE 1 and 7,<br><br>Defendants. | Civil Action No. 1:12-cv-00842-TWP-MJD |

**REPLY MEMORANDUM IN SUPPORT OF:
MOTION FOR ORDER AWARDING COSTS, INCLUDING ATTORNEY'S FEES
PURSUANT TO 17 U.S.C. § 505 & FED R. CIV. P. 54(d)(1)**

**I. Introduction**

On September 12, 2013, Defendant Helferich filed his Motion seeking costs and attorney's fees. (ECF Doc. 95). On October 4, 2013, the Plaintiff, Malibu Media, LLC ("Malibu") filed its Response. (ECF Doc. 107. This Court ordered that the Reply be filed on or before October 15, 2013. (ECF Doc. 104). The Motion, along with this Reply, show that Helferich is the prevailing party and he is entitled to his attorney's fees pursuant to § 505 of the Copyright Act.

**II. Malibu's Misconstrues or Misstates Facts to Hide the Fact Helferich is the Prevailing Party**

Malibu continues its misconstruction of the facts of this case in its Response. It is respectfully submitted that the misconstruction of facts is meant to hide that Malibu, in the face of mounting evidence of this case's demise, simply threw in the towel. *See, Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008). Accordingly, it is important for this Court to examine the facts as they actually exist.

Helferich continues to put forth that he was not served, as indicated by his declaration.[1] There is no need to look beyond the return of service showing a bald man indicated as having brown hair, and being stated to be

---

[1] Blatant misconstruction occurs with statements such as "Mr. Helferich did not expressly deny service. . . ." ECF Doc. 107, p. 3. Helferich's declaration states clearly and unequivocally, "I was never served with a subpoena." ECF Doc. 67-2, ¶ 7 (underlining not added).

1

vastly smaller than he actually is, a point uncontested by Malibu.  Other Malibu cases, with Attorney Nicoletti as counsel have appeared to have issues with process service as well.  *See, e.g., Malibu Media, LLC v. Cotton*, 2013 WL 1800383 (Apr. 24, 2013).

Malibu also misconstrues the record stating it had "substantial evidence" against Helferich.  After failing to disclosing extra days of surveillance in discovery – despite the lawful request – Malibu can only say that Helferich's router was used to <u>attempt</u> to infringe a copyrighted movie.  This is in no manner substantial evidence against Helferich.  There is neither identification of Helferich as an infringer, nor an indication of completion of a copy – a *prima facia* requirement of infringement.  Even the evidence requested, but not disclosed, in discovery doesn't change that.

Did Malibu monitor Helferich's IP address to ensure that the movie was fully copied by anybody?  No.  Could it have.  Yes.  In fact, it is extremely unlikely that the siterip with a whopping size of 29.15 Gb was downloaded in only eight days.  It is even more unlikely when the swarm had seeding problems with downloads taking at least two weeks.  ECF Doc. 106-2.  Further, it is telling that Malibu has not supplied any estimated percentage of completion of download by Helferich's IP address.  This information is contained within the BitTorrent protocol and would certainly indicate that no completion was had.  If the download was completed, Malibu would have evidence from the BitTorrent monitoring (the percentage completion being received by IPP, Ltd.) and it would have said as much.  Instead, it relied on unfounded, and unlikely, assumptions.

Did Helferich know who was using his Internet?  No.  But, Malibu's assertion that a System Analyst – a low level position with a basic degree – should have known who was using his Internet is preposterous.  Many wireless routers come without security codes as default, and Helferich simply didn't bother to monitor all network traffic.[2]  It is respectfully put forth that a majority of people with unsecured wireless do not monitor their neighbors and attempt to violate the Wiretap Act.

Helferich had an expert that, admittedly, was not subjected to cross-examination.  Further, his hard drive was not examined by Malibu's expert.  However, Malibu did not seek to make a copy of the hard drive in discovery

---

[2] Apparently, Malibu is suggesting that Helferich should intercept transfers through his router and trace them down, possibly violating the Wiretap Act.  18 U.S.C. §§ 2510-2522.  Further, it can be noted that a private individual would not fall under the provider exception.

and dismissed the suit before it did so. Malibu's refusal to move forward in a case does not indicate anything other than they likely believed Helferich's expert. Surely, Malibu cannot have it both ways – hypothesizing on what it might have found on a hard drive while simultaneously dismissing the case and denying itself the chance to examine it.[3]

Perhaps it wasn't the expert, but instead, the fact that Helferich's unsecured wireless internet was available to at least four other homes in his area that showed Malibu it never had "substantial evidence." This data completely and irrevocably destroys Malibu's argument that it had to be Helferich who attempted the download, because the downloading happened over a long period of time. Clearly, those other homes had continuous access to the wireless router. Apparently, in cultivating its substantial evidence, Malibu failed to review publicly available satellite imagery to see that this was the case.

Discovery issues abounded in this case, with Malibu dragging its feet to provide needed and required discovery for Helferich's defense. The Response's characterization of these events certainly leaves out the context of the dispute. ECF Doc. 107, p. 7. It is important to clarify the context to show that Malibu's dismissal was part of a cut-and-run when facing evidence that would defeat its unfounded case. The parties had to resort to mediation with the Hon. Mark J. Dinsmore, pursuant to local rules. After multiple extensions of time were provided, and multiple attempts to resolve disputes were made by Helferich, Helferich was forced to demand compliance within days or to file a Motion to Compel. In this situation, on one side, we have submitted discovery from an innocent person of limited means with an expert declaring that the file was never on Helferich's computer and showing any number of other people that could have downloaded the film. On the other, we have an experienced plaintiff in hundreds, if not one thousand plus, of suits with experts collecting data and suing thousands of people. Yet, the latter continued to refuse to turn over sought discovery, which we could assume further drove the nail into the coffin of its case against Helferich.

---

[3] A novel solution to the fees might be to allow examination of the images of the hard drive, if at such time no evidence of infringement or spoliation is found, fees awarded.

3

Finally, Malibu states that it was not the realization of its folly, but rather, that it would cost too much to continue its frivolous litigation of Helferich, that caused it to unilaterally notice dismiss.[4]  To support its spurious statement, Malibu points to the fees awarded in the Bellwether trial as Malibu's costs to continue this case.  However, its discovery responses indicate that Attorney Nicoletti works on contingency.  This flagrant contortion of awarded fees into how much Malibu would pay Attorney Nicoletti to continue this unfounded case against Helferich can only be meant to hide the fact that Malibu threw in the towel.

Overall, these strained mischaracterizations of fact are meant to do one thing: attempt to show that Malibu did not "throw in the towel" as in the *Riviera Distributors* case.  However, once the smoke has been fanned away and the mirrors removed, it is evident that Malibu never had a case.  Upon Helferich spending sums of money to build his case, Malibu threw in the towel, making Helferich the prevailing party.

### III. Malibu Is Exploiting the Lack of Order On Helferich's Long-Standing Motion to Vacate

Malibu was only able to cut-and-run because Helferich did not file an Answer.  Without re-stating the entirety of the procedural history with regard to the Motion to Vacate, filed May 21, 2013, it remains the fact that without an Order vacating the judgment, it would have been inappropriate for Helferich to file an Answer.  Thus, Helferich proceeded, justifiably, awaiting an Order.  If Helferich were able to have filed an Answer, thus precluding the availability of notice dismissal,[5] then Malibu would need consent from Helferich to Dismiss, or permission from this Court.  The dismissal would have been predicated on payment of attorney's fees if agreement with Helferich was sought.  Further, in the spirit of § 505 of the Copyright Act, Helferich would argue for his attorney's fees if Malibu sought judicial permission to dismiss.

It would have been inappropriate to file an Answer in this case.  Helferich had a default judgment entered against him, which terminated him from this litigation.  Indeed, PACER even noted him as terminated from the litigation.  The cases cited by Malibu all characterize answers filed after a default as mere attempts to cure defaults.  Helferich attempted to cure his default as well.  Helferich's Motion to Vacate was just that.  To file an Answer, as a

---

[4] It should be noted that many cases indicate the purpose of notice dismissal is so that Plaintiff's without foundation for cases can be rid of them.  In this case, Malibu continues to argue it has a case, but it doesn't want adjudication on the merits.

[5] Notice dismissal being premised only upon the fact that a Defendant is not actively engaged in litigation, and thus not entitled to have his case adjudicated – clearly not the case before the Court.  *Exxon Corp. v. Maryland Gas Co.,* 599 F.2d 659, 661 (5th Cir. 1971).

terminated party, prior to being re-instated as a party, would not have been appropriate under the circumstances. Helferich was justified in waiting to file his answer, and it was appropriate to do so, until an Order vacating his default was entered.

This case differs greatly from the case of *Malibu Media, LLC v. Cotton*. 2013 WL 1800353 (Apr. 29, 2013). In that case, involving a unilateral notice dismissal without prejudice, this Court rejected a motion for attorney's fees. The defendant in that case filed a Motion to Dismiss based upon lack of service. The defendant made no efforts to litigate the case on the merits. In fact, the Court noted that the Plaintiff might even "re-fil[e] in a different jurisdiction." *Id.* at *2. In that case, the defendant chose to not actively engage in litigation.

However, in the current case, Helferich actively litigated so the Court could "maintain current case deadlines." Minute Entry, p. 1 (ECF Doc. 68). That minute entry encouraged Helferich to participate in discovery while he justifiably awaited an Order on his – what would be an – unopposed Motion to Vacate. Indeed, Helferich justifiably awaited an Order while the Court treated him as a litigant by mediating discovery disputes and issuing orders and minute entries pertaining to positions put forth by Helferich. Unlike the *Cotton* case, Helferich did not "elect to abstain from the decisive joining issue by answer. . . ," he litigated, but <u>was not allowed to file an Answer</u>. *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 143 (7th Cir. 1978). This case is far from similar to the *Malibu v. Cotton* case.

With even a small amount of consideration of these issues, it becomes evident that Malibu's exploitation of the lack of a long-awaited order is inappropriate. Helferich was unable to file an Answer, and this Court should consider that fact when deciding whether or not Helferich is a prevailing party. To find otherwise would encourage potential litigants from allowing a case to move forward pending Orders from the Court. Further, it runs contrary to the spirit of the Copyright Act.

### IV. The Spirit of § 505 of the Act Dictates Payment of Attorney's Fees

Malibu contends that allowing Helferich to obtain fees without adjudication on the merits – the adjudication barred at Malibu's request – runs contrary to the spirit of the Copyright Act. Such a position is untenable, and a true violation of the spirit of the Act would be to allow Malibu to run out of the back door of this Courthouse without

5

compensating an innocent Helferich for the attorney's fees he expended defending himself. If the motion is denied, Malibu will have no reason to treat the Federal Court system as anything but a publicly-subsidized cog in a machine designed to churn many innocent people through a grinder in order to extract nuisance value settlements. Innocent defendants – without the financial resources of millions of dollars of revenue a year – will become too concerned about wasting thousands, if not tens of thousands of dollars, to fight the machine.

In fact, case law has made it clear that the spirit awarding fees to prevailing defendants is to prevent settling for nuisance value settlements. *See, e.g. Assessment Technologies of Wisconsin, LLC v. Wire Data, Inc.* 361 F.3d 434, 436 (7th Cir. 2004). Judicial documentation that the primary motive of BitTorrent plaintiffs is nuisance value settlements is extensive. *See, Memo In Support of Motion For Order Awarding Costs* (ECF Doc. 96, p. 6) (citing numerous cases supporting the same). Today, Malibu is attempting to exploit the lack of an Order on a Motion to Vacate to further its nuisance value settlement campaign. To deny the Motion will only discourage other innocent defendants from defending themselves.

## V. Helferich Remains the Prevailing Party Despite Malibu's Suggested Authority

In defense of the idea that Helferich was not the prevailing party, Malibu cites to various cases regarding civil rights violations, mostly under § 1983. Most of them discuss the so-called "catalyst theory," which is irrelevant to the case at hand. It is evident that Malibu is not changing its litigation business model like those defendants who changed their human right's violating conduct. Further, these cases all involve plaintiffs, not defendants, seeking attorney's fees as prevailing parties. Those are plaintiffs who leveled accusations against others regarding violations of civil rights and later sought their fees. Certainly, a defendant who was incorrectly alleged to have downloaded nearly thirty gigabytes of pornographic films, and is not seeking any gain – and in fact had nothing to gain – should not be treated the same as those plaintiffs with regards to attorney's fees. In fact, in *Fogerty v. Fantasy, Inc.*, the United States Supreme Court expressly rejected looking to the Civil Rights statutes as a means of interpreting § 505 of the Copyright Act. 510 U.S. 517, 524-25 (1994). Thus, it is evident that an attempt to use Civil Rights cases to interpret whether or not Helferich is a prevailing party is inappropriate.

It is true that this Court is to treat plaintiffs and defendants alike under the Copyright Act. *Fogerty v. Fantasy, Inc.*, 510 U.S. at 534. However, this Court should do so with an eye to the full purposes of the Act. *Fogerty* made it clear that defendants with meritorious defenses "should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527. Later cases certainly expressed the opinion that defendants need to be provided their fees and costs when a plaintiff throws in the towel, and that a purpose of the Act is to prevent "a party forced into a nuisance settlement or deterred altogether from exercising his rights." *Riviera Distributors, Inc. v. Jones,* 517 F.3d 926, 928 (7th Cir. 2004) (as to throwing in the towel); *Assessment Technologies of Wisconsin, LLC v. Wire Data Inc.,* 361 F.3d 434, 436 (7th Cir. 2004) (as to quote).

This Court encouraged Helferich to litigate in this case, as it should, by having him participate in discovery so as to maintain case deadlines. (ECF Doc. 68). Denying the Motion for fees would essentially punish him for doing what this Court – in the Minute Entry, the Appellate Court – in various cases including *Assessment Technologies*, and the Supreme Court of the United States – in *Fogerty*, all encouraged him to do.

## V. Fees

Helferich is seeking, as part of any other sanctions this Court may fashion, his attorney's fees and costs in litigating this matter, which to date, consist of $20,777.98. A declaration regarding the same is attached hereto as Exhibit A.

## VI. Conclusion

For the reasons stated above, Helferich respectfully submits the relief sought in his Motion be granted.

Dated: October 15, 2013

Respectfully submitted,

/s/ Jonathan LA Phillips
Jonathan LA Phillips
*One of Helferich's Attorneys*
Shay Kepple Phillips, Ltd
456 Fulton St.
Ste. 255
Peoria, Illinois 61602
309.494.6155 (p)
309.494.6156 (f)

jphillips@skplawyers.com

## CERTIFICATE OF SERVICE

I certify that on October 15, 2013 a copy of the foregoing Memorandum was served to all relevant parties by:

Paul J. Nicoletti
NICOLETTI & ASSOCIATES, P.C.
36880 Woodward Ave.
Suite 100
Bloomfield Hills, MI 48304
*Attorneys for Plaintiffs*
By Electronic Means of Filing through ECF.

/s/ Jonathan LA Phillips
Jonathan LA Phillips
Shay Kepple Phillips, Ltd
456 Fulton St.
Ste. 255
Peoria, Illinois 61602
309.494.6155 (p)
309.494.6156 (f)
jphillips@skplawyers.com